**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| Edward I. Smith, | |
|    Plaintiff, | Civil Action No. |
| v. | 9:10-CV-2152-SB-WOB |
| Teledyne Continental Motors, Inc. | |
|    Defendant. | |
| | |
| Jennifer Dawn Jones, Individually, and as Administrator of the Estate of Robert Gary Jones, Deceased, | |
|    Plaintiff, | Civil Action No. 9:10-CV-2546-SB-WOB |
| v. | |
| Teledyne Continental Motors, Inc., et al., a Delaware corporation; Hartzell Propeller, Inc. a Ohio corporation; Lancair International, Inc. a Oregon corporation; Penn Yan Aero Service, Inc. a New York corporation; Edward I. Smith, an individual; and Does 1 through 10, inclusive. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT CONTINENTAL MOTORS, INC.'S MOTION TO SET ASIDE
AND OBJECTION TO PLAINTIFF JONES' PETITION FOR APPROVAL OF
SETTLEMENT AGREEMENT BETWEEN PLAINTIFF JONES AND DEFENDANT
RPM TECHNIK, INC., F/K/A PENN YAN AERO SERVICE, INC., AND
MOTION TO PRODUCE CORRESPONDENCE AND SETTLEMENT AGREEMENTS
EXECUTED BY PLAINTIFF JONES AND DEFENDANTS
HARTZELL PROPELLER, INC. AND LANCAIR INTERNATIONAL, INC.**

Comes now Defendant Continental Motors, Inc., formerly known as Teledyne Continental Motors or TCM ("CMI"), and respectfully moves the Court to set aside its order granting Plaintiff Jennifer Jones' "Petition for Approval of Settlement with Defendant RPM Technik, Inc. f/k/a Penn Yan Aero Service, Inc." (hereinafter "Penn Yan") (doc. 495), and

approving the Settlement Agreement between Plaintiff and Penn Yan. (doc. 503).  CMI hereby objects to the Settlement Agreement.  More specifically, CMI objects to the provision in the Settlement Agreement set forth in Paragraph 2 thereof. (doc. 495-1, p. 1).[1]  Additionally, CMI requests the Court to order Plaintiff to produce the settlement agreements executed by Plaintiff and previously-dismissed defendants Hartzell Propeller, Inc. and Lancair International, Inc., together with all correspondence regarding same.  In support of thereof, CMI shows unto the Court:

1.     All current parties recently participated in a second mediation held in these actions.[2]  Plaintiff Jones and Defendant Penn Yan reached a settlement, of which Plaintiff sought the Court's approval through her Petition.

2.     Under the terms of the settlement, Penn Yan will pay $165,000, of which Jones will receive one-third ($55,000).  Jones' attorneys will pocket $55,000, and the "third" $55,000 will be applied to costs incurred. (doc. 495-1, pp. 2-4).

3.     One of the terms of the settlement provides:

> Penn Yan Aero shall direct its current and former employees not to voluntarily appear at the trial of this cause.

(doc. 495-1, p. 1, ¶ 2).

---

[1]   Plaintiff filed her Petition on Thursday, September 26, 2013.  The Court entered its order granting the Petition three business days later (on Tuesday, October 1, 2013). CMI was in the middle of preparing its objection when it received the ruling.

[2]   Plaintiff previously settled with Hartzell Propeller, Inc., Lancair International, Inc., and Edward Smith;  consequently, these three former parties did not participate in the mediation held in September 2013.

4.      CMI objects to this provision of the settlement on the grounds that it obstructs the pursuit of justice, contravenes the principals and notions of fair play in the United States Constitution, and is prohibited under South Carolina Rule of Professional Conduct 3.4.

5.      Two Penn Yan employees, Dave Nielsen and Timothy Hansen, are critical witnesses in CMI's defense in this action.  As CMI has been explained in many of its previous filings, the TSIO-550-C engine which is central to this litigation was inspected and tested by Penn Yan employees prior to Edward Smith's purchase and installation of the Engine.  To the point, Mr. Nielsen will testify that the Engine passed inspection and testing.  Mr. Hansen will testify that the inspection and testing of the Engine was conducted under his supervision, and he will confirm that that the Engine passed inspection and testing.

6.      More specifically, Mr. Nielsen worked at Penn Yan in 2002 when Phil Roholt (the person who sold the Engine to Smith) sent the subject engine in for an IRAN.  Mr. Nielsen will testify about his participation in the IRAN of the TSIO-550-C engine at Penn Yan. Mr. Nielsen will testify that he performed various inspections, including a magnetic particle inspection on the engine components, including the crankshaft in accordance with the FAA-approved procedures of Penn Yan's repair station manual and the applicable CMI overhaul manual.  Mr. Nielsen will testify that the no metallurgical anomalies or mechanical cracks were found during Penn Yan's inspection.  Mr. Nielsen will testify about his training, as well as Penn Yan's practice and procedure, process and criteria, quality control, including applicable and related forms, documents and manuals, at Penn Yan in and around 2002 with respect to magnetic particle inspections, and other inspections, of the engine component parts, including the crankshaft.

7.      Mr. Hansen was the Chief Inspector at Penn Yan in 2002 when Phil Roholt sent the subject engine in for an IRAN ("inspect, repair as necessary").  Mr. Hansen will testify about the IRAN Penn Yan performed on the TSIO-550-C under his supervision.  Mr. Hansen will testify that Penn Yan performed various inspections, including a magnetic particle inspection on the engine components, including the crankshaft in accordance with the FAA-approved procedures of Penn Yan's repair station manual and the applicable CMI overhaul manual. Mr. Hansen will testify that the no metallurgical anomalies or mechanical cracks were found during Penn Yan's inspection.  Mr. Hansen will testify about the training of Penn Yan personnel who worked on the engine, as well as Penn Yan's practice and procedure, process and criteria, quality control, including applicable and related forms, documents and manuals, at Penn Yan in and around 2002 with respect to magnetic particle inspections, and other inspections, of the engine component parts, including the crankshaft.

8.      The importance of the testimony of Mr. Nielsen and Mr. Hansen to CMI's defense cannot be understated.  Plaintiff contends that CMI was negligent for failing to conduct the magnetic particle imaging test on the Engine and that if such testing had been performed, cracks would have been discovered on the crankshaft caused by an alleged "catastrophic failure" of the Engine during presale testing.  It is CMI's position that no cracks existed on the crankshaft and that the very magnetic particle imaging test of which Plaintiff complains was in fact conducted by Penn Yan employees Mr. Nielsen and Mr. Hansen prior to Smith's purchase of the Engine.  As the Engine passed the imaging test at Penn Yan, it confirmed that the Engine had not sustained a "catastrophic failure" and that there were no cracks present on the crankshaft, thereby wholly rebutting Plaintiff's theory of the case.

9.      Mr. Nielsen and Mr. Hansen are beyond the subpoena power of this Court, and they cannot be compelled to appear at trial to testify.

10.      During their depositions, Mr. Nielsen and Mr. Hansen both indicated their willingness to *voluntarily* appear at trial to testify.

11.      The provision of the Settlement Agreement would effectively stop Nielsen and Hansen from coming to South Carolina from New York to testify voluntarily.

12.      Attempts to limit a party's access to a fact witness in the absence of a privilege have long been rebuffed in this federal district.  In *Felder v. Wyman*, 139 F.R.D. 85 (D. S.C. 1991), Judge Clyde H. Hamilton, of the Court of Appeals for the Fourth Circuit, sitting by designation, refused to enter a protective order sought by the plaintiff which would have prohibited defendants or their counsel from informal discussions with the treating physician of plaintiff's decedent unless plaintiff consented to, and was present at, the discussions or unless the discussions were part of a deposition conducted under the rules of discovery.  In so ruling, Judge Hamilton observed:

> The obstructions to the investigation of the truth arising from plaintiff's proposed rule are plain.
>
> .          .          .
>
> **The preparation and trial of a lawsuit is a rational search for the truth.  Plaintiff's proposed order allowing him to** monitor defendants' case preparation and **control access to witnesses obstructs that search** . . . .

*Id*., at 89, 90 (bold added).  Although Judge Hamilton was addressing access to witnesses in discovery, his rationale applies with equal force to access to witnesses at trial.  CMI should be allowed access to Penn Yan employees at trial if those individuals are willing to appear without

5

any interference by Plaintiff.  *See also, In re American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation,* ___ F.Supp.2d ___, 2013 WL 2318836 (S.D. W.Va. May 22, 2013) ("As a general rule, in the absence of a specific prohibition, potential witnesses are fair game for informal discovery by either side of a pending action.) (citation omitted).

13.    Further,

**As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence.  Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance.**

*Doe v. Eli Lily & Co.*, 99 F.R.D. 126, 128 (D. D.C. 1983) (*citing International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 41–44 (2d Cir.1975); *Gregory v. United States,* 369 F.2d 185, 187–88 (D.C.Cir.1966); *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 551 (D.C.1981); 8 J. Wigmore, *Evidence* § 2192 (McNaughton rev. ed. 1961)).

14.    Although Mr. Nielsen and Mr. Hansen have been deposed, use of their depositions at trial clearly deprives the jury of the opportunity to observe the witnesses' demeanor up close and in person.  As this Court well knows, the jury's primary function is to find facts, after considering and weighing the evidence presented.  In so doing, the jury members rely heavily on their observations of the witnesses on the stand.  The objected-to provision of the Settlement Agreement prevents Penn Yan employees Mr. Nielsen and Mr. Hansen from ever taking the stand in Beaufort and appearing in front of the jury to give their testimony.

15.    It is precisely because the use of depositions at trial is such a poor substitute for a witness testifying on the stand that the Sixth Amendment of the United States Constitution permits depositions over live testimony only in the most exceptional circumstances, even if the

deposition was videotaped and even if defense counsel cross-examined the deponent. *United States v. Huang*, 826 F.Supp. 945 (S.D. N.Y. 1993) ("The use of depositions in lieu of live testimony at trial often contravenes the spirit of the Sixth Amendment.") (*citing Barber v. Page*, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right.  It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.")).  Although this civil litigation does not trigger the constitutional protection under the Sixth Amendment afforded a person accused of a crime, the principal regarding the importance of live testimony is applicable to all jury trials, and it is the genesis of the courts' strong preference for live testimony over the use of depositions.

16.     Moreover, Plaintiff's demand that Penn Yan direct its employees not to voluntarily appear at trial violates South Carolina public policy.  In the preamble to the South Carolina Rules of Professional Conduct (SCRPC), it is recognized that an attorney is "a public citizen having special responsibility for the quality of justice."   As a part of the attorney's obligation to meet this special responsibility, Rule 3.4, SCRPC provides:

### RULE 3.4. FAIRNESS TO OPPOSING PARTY AND COUNSEL

**A lawyer shall not:**

**(a)     unlawfully obstruct another party's access to evidence** or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.  **A lawyer shall not counsel or assist another person to do any such act;**

.        .        .

or

**(f) request a person other than a client to refrain from voluntarily giving relevant information to another party** unless:

(1)     the person is a relative or an employee or other agent of a client; and

7

(2)      the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

Under this Rule, an attorney cannot 1) obstruct access to evidence;  2) counsel or assist another person to obstruct access to evidence;  or 3) request a person other than a client to refrain from voluntarily giving relevant information to another party unless meeting the exceptions described in 3.4 (f)(1) and (2).[3]  The obvious basis for this prohibition is that obstructing access to evidence or relevant information undermines the fairness of the trial process and thus, adversely affects the quality of justice.

Although parties are not bound by the South Carolina Rules of Professional Conduct, there is no logical basis for allowing them to obstruct another party's legitimate access to evidence in light of the fact that their attorney is prohibited from counseling or assisting them in doing so. It is readily apparent that this provision violates this articulated South Carolina public policy by obstructing CMI's access to evidence for the following reasons.  Plaintiff is well aware that Mr. Nielsen and Mr. Hansen are beyond the subpoena power of the Court.  CMI cannot compel their attendance and is unable provide their live testimony to the jury without their voluntary participation.  However, the improper settlement provision *requires*, through the corporate entity, Penn Yan, that Mr. Nielsen and Mr. Hansen, as well as all other "current and former" employees of Penn Yan "refrain from voluntarily giving relevant information to another party" by prohibiting them from voluntarily appearing at trial.

In explaining the jury's role in the trial process, judges routinely explain to them that they alone are the "judges of the facts."  To decide the facts, it is standard to charge them that they

---

[3]  The exceptions in Rule 3.4 (f)(1) and (2) do not apply, as Penn Yan and its current and former employees are not Plaintiff's counsels' clients, relatives of clients, employees of clients, or agents of clients and clearly CMI's interests will be adversely affected.

may consider the demeanor of the witnesses who appeared before them.  The appearance of the witness at trial plays an integral, and often a crucial, role in the jury's determination of the true facts.  Indeed, appellate courts routinely defer to the trial court on evidentiary-based rulings because they saw and heard the witnesses, observing their demeanor, and were in a better position to determine the truthfulness of the evidence.  Consequently, this settlement provision, which undermines CMI's ability to provide the live testimony of critical fact witnesses, obstructs CMI's access to evidence.

17.    The only reason the objectionable provision is in the settlement agreement is due to the Plaintiff's insistence, as she is fully aware of how damning the testimony of Mr. Nielsen and Mr. Hansen will be to her case.  At the same time, there is no reason Penn Yan would either want or need such a provision in the settlement agreement.

18.    CMI does not object to the settlement *per se* by Penn Yan with the Plaintiff.  CMI only objects to Paragraph 2 preventing Penn Yan current and former employees from coming to trial.  CMI is requesting that the Court strike or otherwise invalidate Paragraph 2 and then otherwise approve the settlement.

19.    Earlier in this litigation, Plaintiff settled her claims against defendants Hartzell Propeller, Inc., and Lancair International, Inc.  The terms of those settlements have not been disclosed to CMI, nor did Plaintiff seek this Court's approval of those settlements.  In light of Plaintiff's attempt to thwart justice and the truth by preventing Penn Yan employees from voluntarily appearing at trial, CMI requests the Court to require Plaintiff to produce the settlement agreements executed by Plaintiff and Hartzell and Lancair, together with all

correspondence regarding same, so it can be determined if Plaintiff included similar objectionable provisions in her settlements with those defendants.

## CONCLUSION

WHEREFORE, for the reasons stated above, CMI respectfully requests that the Court set aside its order granting Plaintiff's Petition and approving the Settlement Agreement between Plaintiff and Penn Yan. More specifically, CMI moves the Court to strike Paragraph 2 of the Settlement Agreement (doc. 495-1, p. 1) in which Penn Yan is required to "direct its current and former employees not to voluntarily appear at the trial of this cause." Additionally, CMI request the Court to require Plaintiff to produce the settlement agreements executed by Plaintiff and Hartzell and Lancair, together with all correspondence regarding same.

CMI requests that the Court set this matter for a hearing on Tuesday, October 8, 2013, at the same time the Court has scheduled a hearing on the other pending motions.

Respectfully submitted,

Dated: October 2, 2013

*s/ D. Jay Davis, Jr.*
D. Jay Davis, Jr., Fed. I.D. #6723
William L. Howard
YOUNG CLEMENT RIVERS, LLP
25 Calhoun St., Ste. 400
Charleston, SC 29401
Tel.: 843.720.5406
Fax: 843.579.1355
jdavis@ycrlaw.com
bhoward@ycrlaw.com
*and*

10

Norman E. Waldrop, Jr.
Sherri Rich Ginger
ARMBRECHT JACKSON, LLP
P.O. Box 290
Mobile, AL 36601
Tel: 251.405.1202
Fax: 251.432.6843
new@ajlaw.com
srg@ajlaw.com
*Attorneys for Defendant*
*Continental Motors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Olin Fayrell Furr, Jr.
FURR, HENSHAW AND OHANESIAN
P. O. Box 2909
Myrtle Beach, SC 29578
fho@sc.rr.com

Daniel J. Callahan
Brian J. McCormack
D. Bryan Garcia
CALLAHAN  & BLAINE
3 Hutton Centre Drive, Ninth Fl.
Santa Ana, CA 92707
Daniel@callahan-law.com
bmccormack@callahan-law.com
dbgarcia@callahan-law.com


Robert J. Lowe, Jr.
LOWE and ASSOCIATES, P.C.
P. O Box 21556
Charleston, SC 29413
rlowe@lowefirm.com

R. Bruce Wallace
NEXSEN PRUET
P.O. Box 486
Charleston, SC 29402
bwallace@nexsenpruet.com



717358